UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :

INMUSIC BRANDS, INC.,                      :

                                                             :      **ORDER AND OPINION**
                                      Plaintiff,  :      **GRANTING DEFENDANT'S**
           -against-                       :      **MOTION TO DISMISS**
                                                           :
SONY CORPORATION OF AMERICA,    :      22 Civ. 6602 (AKH)
                                                            :
                                              Defendant.  :
                                                               :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff inMusic Brands, Inc. ("inMusic" or "Plaintiff") sues Defendant Sony Corporation of America ("Sony") alleging direct patent infringement under 35 U.S.C. § 271(a) of a patent claiming a turntable that combines the elements of a standard analog phonographic turntable with a built-in analog-to-digital converter and controller that outputs digital audio signals. Sony moves to dismiss Plaintiff's Complaint under 35 U.S.C. § 101 as an invalid patent. ECF No 23. For the reasons described below, Sony's motion is granted.

## BACKGROUND

        inMusic is a Florida corporation that markets and sells music technology and consumer electronic brands. Complaint, ECF No. 1 ("Compl."), ¶¶ 1, 7. Among its product offerings, inMusic sells a line of analog-to-digital converter ("ADC") turntables. *Id.* ¶ 7. In July 2009, following an application filed in 2004, the United States Patent and Trademark office (the "PTO") issued U.S. Patent No. 7,567,498, entitled "Phonographic Turntable with Built-in Audio to USB or Firewire Device." *Id.* ¶¶ 8; ECF No. 11-1 (the "'498 Patent"). inMusic is the assignee of all right, title and interest in the '498 Patent. *Id.* ¶ 9.

The specifications of the '498 Patent describe the invention as "relat[ing] to a phonographic turntable which includes a built-in audio conversion device, which is typically to USB, firewire, or other computer digital communication protocol, inside the turntable." *Id.*, 1:8-11.

In its Description of Prior Art, the '498 Patent identifies several preexisting systems for converting analog audio produced by a turntable into a digital format. Some applications "connected the line level output of a turntable . . . to the analog input of a computer sound card." *Id.* 1:25-28. Others described an "external audio conversion device between the turntable and [a computer] soundcard." *Id.* 1:28-30. Finally, the "SPDIF (Sony/Phillips Digital Interface) [was] built into some turntables in order to provide a digital output." '498 Patent, 1:35-36. The Patent's description of the SPDIF system does not identify the specific protocol of the SPDIF's output, but it does specify that the output "is not a standard protocol such as USB (universal serial bus) or firewire (IEEE 1394)." *Id*. 1:37-38. In short, the '498 Patent describes prior art either allowing for the external conversion of analog audio to a digital format or converting audio internally and providing digital output in a protocol other than USB or firewire.

The '498 Patent's sole independent claim, Claim 1, recites:

1. A turntable including:

    a rotatable platter;

    a tonearm for receiving a phono cartridge for generating an analog audio signal representative of an audio recording;

    an analog to digital converter for receiving an analog audio signal from the phono cartridge; and

    a controller responsive to said analog to digital converter for generating an output digital audio signal of music or speech representative of an audio recording from an output of said analog to digital converter, representative of said analog audio signal;

2

> wherein said analog to digital converter and said controller are included within said turntable; and
>
> wherein said output digital audio signal is output from said turntable and uses standard computer protocol.[1]

*Id.* 2:60-3:7.

Sony is a New York corporation offering ADC turntables in competition with inMusic, among them the PS-HX500 and PS-LX310BT (the "Accused Products"). Compl. ¶ 11. Each of the Accused Products comprises a rotatable platter, a tonearm, and a controller responsive to the ADC that generates an output digital audio signal. *Id.* ¶ 12. Each additionally contains a USB port and a jack for outputting the digital audio signal. *Id.* inMusic alleges that by making, using, selling, offering for sale and/or importing into the United States the Accused Products, Sony infringes claims 1 through 6 of the '498 Patent in violation of 35 U.S.C. § 271(a). *Id.* ¶ 17. On October 31, 2022, Sony filed a motion to dismiss the Complaint for patent ineligibility under 35 U.S.C. § 101. For the reasons discussed below, I grant Sony's motion.

## DISCUSSION

I.  35 U.S.C. § 101- Patent Eligibility

"Patent eligibility, a question of law often involving subsidiary factual questions, can be decided on a motion to dismiss 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Island Intellectual Property, LLC v. Stonecastle Asset Mgmt. LLC*, No. 19-cv-4792 (JPO), 2020 WL 2793000, at *2 (S.D.N.Y. May 29, 2020) (quoting *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121,

---

[1] Dependent claims 2 and 3 specify that the "standard computer protocol" is either the USB or firewire protocol. *Id.* 3:8-11.

1125, 1128 (Fed. Cir. 2018)), aff'd, 792 F. App'x 949 (Fed. Cir. 2020). Although a court must construe the facts in the light most favorable to the non-moving party, it should not accept as true allegations that contradict matters subject to judicial notice, such as the patent claims, specification, and prosecution history. *See, e.g., Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). However, factual disputes about whether an aspect of the claims is inventive "may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) (citing *Aatrix Software, Inc.*, 882 F.3d at 1126-27).

The Supreme Court articulated a two-step test for determining whether claims are directed to patent-ineligible subject matter in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18. (2014). Step One asks whether the claims as a whole are directed to a patent-ineligible concept, such as an abstract idea. *See id.* at 217-18; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-79 (2012). If the claims are directed to an abstract concept, then Step Two requires the court to "search for an 'inventive concept,'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18, 221, 224-26 (quoting *Mayo*, 566 U.S. at 72-73).

a. Step One

In Step One, the Court asks "what the patent asserts to be the focus of the claimed advance over the prior art . . . focus[ing] on the language of the [a]sserted [c]laims themselves, considered in light of the specification." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), cert. denied, 212 L. Ed. 2d 10, 142 S. Ct. 1113 (2022). The claim language and the specification make it clear that the claim is "'directed to a result or effect that itself is the abstract idea and

merely invoke[s] generic processes and machinery' rather than 'a specific means or method that improves the relevant technology.'" *Id.* (quoting *Smart Sys. Innovations, LLC v. Chi. Transit Authority*, 873 F.3d 1364, 1371 (Fed. Cir. 2017)).

The specification of the '498 Patent describes the invention as relating to "a phonographic turntable which includes a built-in audio conversion device, which is typically to USB, firewire, or other computer digital communication protocol, inside the turntable." '498 Patent, 1:8-11. inMusic does not, nor could it, dispute that the concept of converting analog audio signals into a digital format had existed long before the patent application was filed in 2004. Indeed, the '498 Patent itself identifies several preexisting iterations of such a process in its Description of Prior Art, including the built-in SPDIF system. *Id.* 1:25-38. inMusic instead argues that the claims are directed toward a tangible device with a specific configuration rather than the concept of analog-to-digital audio conversion itself.

However, looking to the claims themselves, I find nothing more than a list of conventional components performing their basic functions. Figure 1 depicts a turntable having "a conventional . . . tonearm [] and phono cartridge" that engages "a conventional LP record rotating on [a] platter" to generate "a conventional analog electrical signal, representative of the audio recording on the LP record." *Id.*, 2:10-18, 2:30-38. The turntable additionally includes an "analog to digital converter (ADC)" that receives the analog signal and converts it to digital, and a "USB controller" that outputs a "USB signal" through a "USB jack". *Id.*, 2:18-28.[2] No technical description of the conversion of analog to standard digital protocol is provided. The claimed advance of the '498 Patent is the use of generic, conventional components to convert analog audio into "standard" digital protocols. I conclude that "[w]hat is claimed is simply a

---

[2] Figure 2 depicts a nearly identical turntable, the sole difference being the substitution of a firewire-standard protocol for the USB-standard protocol. *Id.* 1:29-53.

generic environment in which to carry out the abstract idea." *Yu*, 1 F.4th at 1043.  Courts have reached the same conclusion with regard to other claims similarly describing tangible devices made up of conventional or generic components.  *See, e.g.*, *Id.* at 1042-44 (claiming an "improved digital camera" including "analog-to-digital converting circuitry . . . digitizing said . . . images" and "a digital image processor . . . producing a resultant digital image" found to be "conventional components" that "perform only their basic functions . . . set forth at a high degree of generality"); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 179 (S.D.N.Y. 2018) (patent ineligible where claims were "through seemingly differing arrangements of types of generic devices); *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (claiming "a 'bedside device' connected to . . . 'bedside machines' that 'convert[s] received data streams' from the bedside machines" to "'standardized data . . . for display,'" which "'fails to provide any technical details for the tangible components'" or "explain[] how the drivers do the conversion" (internal citation omitted)).  I therefore find that the '498 Patent is directed to an abstract concept.

    b. Step Two

Under *Alice* Step Two, where a patent is directed to an abstract concept, the Court must determine whether there is an "inventive concept" —i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 224-26. In order to find an "inventive concept" the patent must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry,'" *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018).  Simply reciting "concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*,

823 F.3d 607, 613 (Fed. Cir. 2016). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("even assuming that Bluetooth was conventional at the time of these inventions, implementing a well-known technique with particular devices in a specific combination, like the two-device structure here, can be inventive").

inMusic describes the '498 Patent's inventive concept as "combining the conventional turntable features of a revolving platter, a pivoting tonearm and an analog phono cartridge with the novel elements of an analog to digital converter and controller built inside the turntable that outputs digital signals in a standard protocol." Mem. in Opp. at 14 (ECF No. 32). I find this unpersuasive. As discussed above, the concept of combining the conventional turntable features with analog-to-digital conversion built inside the turntable was already in practice at the time of the '498 Patent; the patent itself acknowledges that "[t]he SPDIF (Sony/Phillips Digital Interface) has been built into some turntables in order to provide a digital output." '498 Patent, 1:35-36. The sole novelty of the Patent therefore lies in outputting the converted digital audio in a "standard protocol" like USB or firewire. *Id.* 1:37-38. This is insufficient to constitute an inventive concept; the claim "is recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea identified above." *Yu*, 1 F.4th at 1045, citing *In re TLI Commc'ns*, 823 F.3d at 615 (claims ineligible at *Alice* Step Two in part because "the recited physical components behave exactly as

7

expected according to their ordinary use"). Accordingly, I find that '498 Patent fails at Step Two.

I therefore hold that the patent at issue is invalid, as it is directed to an abstract idea and lacks an inventive concept.

## CONCLUSION

For the reasons provided above, Defendant's motion to dismiss is granted. The Clerk of the Court shall terminate ECF No. 23, and grant judgment to Defendants dismissing the case against them.

SO ORDERED.

Dated:     March 13, 2023          /s/ Alvin Hellerstein
             New York, New York     ALVIN K. HELLERSTEIN
                                                 United States District Judge